Verna **EMERY, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**AMERICAN GENERAL FINANCE, INC., Defendant.**

No. 94 C 5181.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 21, 1994.

Daniel A. Edelman, Cathleen M. Combs, Tara Leigh Goodwin, James Eric Vander Arend, Michelle Ann Weinberg, O. Randolph Bragg, Edelman & Combs, Chicago, IL, for plaintiff.

Jonathan N. Ledsky, Craig Allen Varga, Peterson & Ross, Chicago, IL, for American Gen. Finance, Inc.

### MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Verna Emery brings this one count putative class action against American General Finance, Inc., alleging a violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* The Court's jurisdiction is invoked pursuant to 18 U.S.C. § 1964 and 28 U.S.C. § 1331. Defendant has moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted.

Motions to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–03, 2 L.Ed.2d 80 (1957). The Court shall accept as true all of plaintiff's well-pleaded factual allegations and otherwise liberally construe the complaint. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In addition, the Court shall give plaintiff the benefit of every reasonable inference that may be drawn from the facts. *Powe v. City of Chicago,* 664 F.2d 639, 642 (7th Cir.1981). After applying these standards to plaintiff's complaint, for the reasons set forth below, the Court grants defendant's motion to dismiss.

### FACTS

The complaint alleges that on July 14, 1992, plaintiff received a loan from defendant, and signed a note indicating the amount financed as $1983.81, with a finance charge of $1327.08 and an Annual Percentage Rate ("APR") of 36%. The note was secured by various items of personal property. Of the amount financed, $51.03 was a premium for credit life insurance, $120.82 represented the premium for credit disability insurance, $64.42 represented the premium for personal property insurance, and $6.00 was the premium for "non-filing insurance."

In late January 1993, plaintiff received a flyer from defendant soliciting her to borrow more money. The flyer provides as follows:

Dear Verna:

I have extra spending money for you.

Does your car need a tune-up? Want to take a trip? Or, do you just want to pay off some of your bills? We can lend you money for whatever you need or want.

You're a good customer. To thank you for your business, I've set aside $750.00 * in your name.

Just bring the coupon below into my office and if you qualify, we could write your check on the spot. Or, call ahead and I'll have the check waiting for you.

Make this month great with extra cash. Call me today—I have money to loan. Sincerely,

Jeff Siegler, Branch Manager

(312) 263–2030

\* Subject to our normal credit policies.

(An exact copy of the flyer is attached to this Opinion.)

On January 29, 1993, plaintiff signed a new note with defendant, with an amount financed of \$2399.83, a finance charge of \$1641.28, and an APR of 35.69%. The new note was apparently secured by the same personal property as the first note. Of the amount financed, \$61.75 represented the premium for credit life insurance, \$146.20 represented the premium for credit disability insurance, \$77.99 represents the premium for personal property insurance and \$6.00 represents the premium for "non-filing insurance." An additional \$96.80 went to "CU for IN," which is unidentified in the documents signed by plaintiff.

According to plaintiff, the second note was a "refinancing" of her original loan, and that had defendant simply made a second loan to plaintiff for the additional amount requested, it would have cost plaintiff over \$800.00 less. Plaintiff further alleges that defendant never told her that it would be cheaper for her simply to obtain a second loan rather than refinancing the original loan.

Plaintiff's complaint is an attack on defendant's alleged policy or practice of what plaintiff terms "loan flipping." Defendant solicits by mail its current loan customers to request additional funds, and then documents the loan of the additional funds as a refinancing of the original loan plus the additional money. Defendant does not tell the borrower that the cost of refinancing is enormously greater than the cost of obtaining an additional loan. According to plaintiff, defendant's actions amount to a scheme or artifice to defraud by use of the mails (mail fraud), which in turn constitutes a predicate act under RICO.

Defendant has moved to dismiss under Rule 12(b)(6), arguing that the complaint: (1) fails to allege sufficiently the elements of mail fraud as the predicate act for a RICO violation; (2) fails to allege sufficiently that defendant, as the alleged RICO "person," conducted or participated in the operation or management of an alleged "enterprise," as section 1962(c) requires; and (3) fails to allege that defendant's mailing was the proximate cause of RICO injury. Because the Court finds the first argument to be dispositive, this Opinion will not address the other two.

### DISCUSSION

■ Plaintiff has brought her complaint in one count alleging a RICO violation. Although not set forth with the appropriate specificity,[1] plaintiff appears to allege a violation of section 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. 1962(c).

■ Thus, to state a claim under section 1962(c) a complaint must allege sufficiently: (1) the existence of an enterprise that affects interstate or foreign commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated in the conduct of the enterprise's affairs; and (4) that the defendant participated through a pattern of racketeering activity. *Dennis v. Peoples Gas Light & Company,* 1990 WL 70372 (N.D.Ill.1990). While defendant has challenged all four elements, it is the last which the Court finds dispositive.

■ "Racketeering activity" under RICO can consist only of the various criminal acts set forth in 18 U.S.C. § 1961(1). There

---

1. Under Fed.R.Civ.P. 9(b), fraud must be pled with particularity. Apart from the allegations relating to the existence of a class, plaintiff has neglected to set forth the specific section of RICO defendant allegedly violated. Because the different RICO sections require a plaintiff to prove different things, it is essential to plead precisely the RICO section allegedly violated. *Reynolds v. East Dyer Development Company,* 882 F.2d 1249, 1252 (7th Cir.1989).

must be at least two such predicate acts properly pled in order to even address whether other precedential requirements for a cognizable RICO "pattern" have been satisfied. *Id.* at *3.

Plaintiff attempts to meet this predicate act requirement by alleging that defendant committed various acts of mail fraud. Mail fraud is one of the criminal acts specified in section 1961(1) as racketeering activity under RICO. The question then becomes whether plaintiff has pled sufficiently a mail fraud violation pursuant to 18 U.S.C. § 1341. Defendant argues that plaintiff has not. The Court agrees.

The elements of a cause of action for mail fraud are: (1) intentional participation in a scheme to or specific intent to defraud; and (2) use of the mails in furtherance of the scheme. *Associates in Adolescent Psychiatry v. Home Life Ins. Co.,* 751 F.Supp. 727, 729 (N.D.Ill.1990), affirmed, 941 F.2d 561 (7th Cir.1991), *cert. denied,* 502 U.S. 1099, 112 S.Ct. 1182, 117 L.Ed.2d 426 (1992). To establish fraud, plaintiff must show that defendant made a false representation of material past or existing fact, which was known to be false when made. The misrepresentation must have been made intentionally to induce plaintiff to act, and plaintiff must justifiably rely on the representation. Finally, plaintiff must be injured as a result of such reliance. *Id.* at 730.

Plaintiff's complaint fails to identify any specific false statement of material fact allegedly made by defendant. When challenged to do so by defendant's motion and brief, plaintiff remained conspicuously silent. The complaint contains no allegation that the mailing contained any false statement, or that any false statement was made to plaintiff when she applied to borrow the additional sums. Specifically, plaintiff does not allege that the flyer indicates in any way that plaintiff would receive a second loan (as opposed to a refinancing), or that she asked and was told that a second loan was not available.

Nor has she alleged that she was told that refinancing would be cheaper. Plaintiff also has not alleged that she or anyone else asked for a check for $750 (the amount the flyer indicated was available) and was refused. Any of these allegations would be sufficient, but all are lacking. Indeed, plaintiff's entire case is premised upon defendant's failure to volunteer the fact that a second loan would be cheaper than a refinancing of the first loan.

It is undisputed, however, that plaintiff was given the extensive disclosures required by the federal Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. relating to the cost of the refinancing. The stated purpose of TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). Prior to agreeing to the refinancing, Plaintiff was informed of the exact amount necessary to pay off the existing loan, the amount financed, the finance charge, the APR, the total number of payments and the amount of the monthly payments. Having received all that TILA requires, plaintiff has not, and apparently cannot allege that defendant has violated any specific federal or state consumer protection statute.

As pled, this case simply involves a failure by defendant to disclose a relevant fact: that a second loan would be cheaper than a refinancing. Plaintiff alleges that this failure is deceptive, misleading, and unethical conduct which amounts to fraud for purposes of the mail fraud statute. Despite her extensive effort,[2] plaintiff has cited no cases in which a mere failure to disclose, absent something more (e.g., a duty to disclose), was held to be fraud under the mail fraud statute. Nor has the Court found any. As Judge Shadur has stated:

> All such non-disclosure cases, however, involve an abuse of trust by at least one.

---

**2.** Plaintiff's memorandum has a full 90 citations to authority, many of which, as defendant has pointed out, contain out-of-context quotations and fail to lend any significant support to the propositions for which they were cited. The Court suggests that in the future plaintiff's counsel concern themselves more with complying with the Local Rule 9D relating to page length than with presenting every citation they can find through the computer.

party to the scheme. *See United States v. Bush,* 522 F.2d 641, 646 (7th Cir.1975); *United States v. Keane,* 522 F.2d 534 (7th Cir.1975). Often the trust is a public one (essentially a fiduciary duty owed to the entire public), as in the *Bush* and *Keane* cases or in *United States v. Mandel,* 415 F.Supp. 997 (Md.1976).

Where such a public trust or other fiduciary relationship exists, courts have held a breach of that duty (at least when "other factors" are also present) to be within the mail fraud statute, *Bush,* 522 F.2d at 696. Here there was neither public trust nor other fiduciary relationship, but only an arm's length transaction for the sale of real estate.

*Salisbury v. Chapman,* 527 F.Supp. 577, 580 (N.D.Ill.1981).

In the instant case, plaintiff has made no allegation of any fiduciary relationship between her and defendant. Nor has plaintiff alleged any other factor that would create a legal duty on defendant to disclose the information.

Plaintiff attempts to distinguish the cases cited above by relying on *United States v. Biesiadecki,* 933 F.2d 539, 543 (7th Cir.1991), in which the court repeated but then distinguished the broad language contained in *United States v. Keplinger,* 776 F.2d 678, 697 (7th Cir.1985). In *Keplinger,* the court stated that "omissions or concealment of material information can constitute fraud ... cognizable under the mail fraud statute, without proof of a duty to disclose the information pursuant to a specific statute or regulation." *Id.* at 697.

*Biesiadecki,* a criminal mail fraud action, lends no support to plaintiff because there, despite the quoted language, the government had presented extensive evidence of affirmative misrepresentations in addition to the alleged omissions. The court, therefore, rejected Biesiadecki's argument that the jury could have improperly relied solely on mere omissions in its decision to convict him. The *Biesiadecki* court, even after citing the broad language from *Keplinger,* specifically upheld a jury instruction that provided in part:

Under the mail and wire fraud statutes it is unlawful to make false or misleading

statements in furtherance of the scheme. It is also unlawful to speak half truths or to omit to state facts necessary to make the statements made in light of the circumstances under which they were made not misleading. *Absent such circumstances mere omissions do not constitute fraud under the mail and wire fraud statutes. . . .*

*Biesiadecki,* 933 F.2d at 543 (emphasis added).

Moreover, the Seventh Circuit has cautioned against relying on the broad language found in *Keplinger* and other like cases. *Reynolds v. East Dyer Development Company,* 882 F.2d 1249, 1251 (7th Cir.1989) (citing *United States v. Holzer,* 816 F.2d 304, 309 (7th Cir.1984)). Indeed, in *Holzer* the court specifically stated that "[t]he frequently quoted suggestion in *Gregory v. United States,* 253 F.2d 104, 109 (5th Cir.1958), that whatever is not a 'reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society' is fraud ... cannot have been intended, and must not be taken literally." *Holzer,* 816 F.2d at 309.

 It is clear, then, that in this Circuit an omission of a material fact can constitute fraud under RICO only if either there exists a duty to disclose the information, or the defendant makes statements of half truths or affirmative misrepresentations. *Reynolds,* 882 F.2d at 1252; *Caraluzzi v. Prudential Securities, Inc.,* 824 F.Supp. 1206, 1212 (N.D.Ill.1993).

 Plaintiff acknowledges that defendant has made no affirmative misrepresentations (memorandum in opposition, p. 5), but maintains that this is a case involving both omissions and deceptive statements. According to plaintiff, the deceptive statements are contained in the flyer sent to her by defendant. Plaintiff asserts that the flyer is deceptive and misleading because: (1) it purports to be an offer for an additional loan; (2) it uses the terms "[w]e can lend you money," "I have money to loan," and "we could write your check on the spot"; and (3) it does not disclose that the borrower will

refinance his or her existing loan. (complaint ¶ 10.)

Reason (3) is, of course, the material omission that is at the heart of plaintiff's complaint, but by itself is not deceptive and cannot on its own support a cause of action for mail fraud. Plaintiff fails to allege specifically how (1) and (2) are deceptive. For example, there is no allegation that defendant could not lend plaintiff money, or did not have additional money to loan, or could not (or, perhaps more significantly, would not) write her a check on the spot. Moreover, while plaintiff is correct that the flyer does not state that the new loan would be in the form of a refinancing (it also does not state that it would be in the form of a second loan) it does indicate that any loan would be subject to defendant's normal credit practices.

Viewing the statements made as a whole, and the totality of the flyer's contents, the Court concludes that the flyer is exactly what plaintiff herself describes: "[a] solicitation to existing loan customers to borrow more money." (complaint ¶ 9.) Even drawing every reasonable inference from the complaint's well-pled allegations, the flyer cannot fairly be read as deceptive, thereby requiring the disclosure of additional facts to make it not misleading. Despite plaintiff's effort to characterize it otherwise, the complaint alleges nothing more than a failure to disclose material facts. Without a duty to disclose those facts, defendants cannot be liable under RICO for mail fraud.

Finally, plaintiff argues that the statements made must be analyzed in light of their intended audience. Plaintiff alleges that all of defendant's borrowers lack sophistication, and do not understand that it is cheaper to obtain a second loan than to refinance the original because they cannot perform the calculations necessary to compare the two.

While it is true that the mail fraud statute is intended to protect "those who are gullible, as well as those who are skeptical," plaintiff's argument begs the question. As succinctly stated in *United States v. Brien*, 617 F.2d 299 (1st Cir.1980), a criminal RICO case relied on by plaintiff:

> If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright. These are criminal statutes, not tort concepts. The only issue is whether there is a plan, scheme or artifice to defraud.

*Id.* at 311.

■■■■ Thus, in a criminal context, it is no defense to a mail fraud action that a more intelligent person might not have been duped. While the civil RICO provisions are statutory torts, *Reynolds*, 882 F.2d at 1253, the initial inquiry necessarily must remain whether the complaint alleges sufficiently a scheme to defraud. If the scheme is aimed at dull, gullible persons, then perhaps the deception involved need not be as intricate, but the plaintiff must nonetheless set forth adequately the elements of the scheme. In the instant case, plaintiff has merely alleged a failure to disclose relevant facts. Because plaintiff has alleged no duty on defendant's part to make the disclosure, nor any affirmative misrepresentations or even deceptive statements, the complaint is deficient. That is not to say that the Court condones defendant's conduct, or that such conduct cannot form the basis of some other cause of action not pled in this case. The allegations simply do not mesh with a RICO mail fraud theory supporting treble damages. Unfortunately for plaintiff, "not all conduct that strikes a Court as sharp dealing or unethical conduct is a scheme or artifice to defraud." *United States v. Holzer*, 816 F.2d 304, 309 (7th Cir. 1987).

### CONCLUSION

For the reasons set forth above, defendant's motion to dismiss is granted.[3]

---

**3.** This opinion does not bind putative class members because no class has yet been certified.

**MONEY** *Hotline*

Verna M. Emery
1165 N. Milwaukee 2511
Chicago, IL 60622-4026

Dear Verna:

I have extra spending money for you.

Does your car need a tune-up? Want to take a trip? Or, do you just want to pay off some of your bills? We can lend you money for whatever you need or want.

You're a good customer. To thank you for your business, I've set aside $750.00* in your name.

Just bring the coupon below into my office and if you qualify, we could write your check on the spot. Or, call ahead and I'll have the check waiting for you.

Make this month great with extra cash. Call me today -- I have money to loan.

Sincerely,

*Jeff Siegler*
Jeff Siegler, Branch Manager
(312) 263-2030

*Subject to our normal credit policies

**MONEY** *Hotline*

## $750.00 Cash Coupon

$750.00 cash for:

Verna M. Emery
1165 N. Milwaukee 2511
Chicago, IL 60622-4026

Jeff Siegler, Branch Manager
200 West Adams Street
Twelth Floor, Suite 1203
Chicago, II 60606-5224

**AMERICAN GENERAL**

American General Finance

This is not a check. Non-negotiable
Subject to our normal credit policies.