CHAMBERLAIN MANUFACTURING
CORPORATION, Plaintiff,

v.

MAREMONT CORPORATION,
Defendant.

No. 90 C 7127.

United States District Court,
N.D. Illinois,
Eastern Division.

March 14, 1996.

Andrew R. Laidlaw, Debra Ann Winiarski, Timothy F. Haley, Kathleen Maria Myalls, Douglas Joseph Bank, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Marc S. Gold, Seyfarth, Shaw, Fairweather & Geraldson, Washington, DC, for Chamberlain Mfg. Corporation.

Michael B. Nash, Schwartz & Freeman, Chicago, IL, Charles R. Donnenfeld, Earl J. Silbert, Ellen Kabcenell Wayne, Adam S. Hoffinger, Schwalb, Donnenfeld, Bray & Silbert, Washington, DC, for Maremont Corp., Arvin Industries Inc.

*MEMORANDUM OPINION AND ORDER*

PLUNKETT, District Judge.

This case is before us on two motions of defendant Maremont Corporation ("Maremont"). First, Maremont seeks leave to file an amended answer and counterclaim based upon an assignment of a non-party's claims against Maremont to plaintiff Chamberlain Manufacturing Corporation ("Chamberlain"), executed in May 1995. Second, it moves for summary judgment for the second time on Chamberlain's RICO claim (Count I).[1] In that motion, it asserts that the Seventh Circuit's decision in *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640 (7th Cir.1995), constitutes a change in the law which calls into doubt our earlier ruling that Chamberlain has sufficiently distinguished between the RICO "person" and the RICO "enterprise" under section 1962(c).[2] For the reasons set forth below, we deny the motion for leave to file an amended answer and counterclaim, and we grant the motion for summary judgment on Count I. Because Count I was the basis for our subject matter jurisdiction, and because we decline to exercise our supplemental jurisdiction over Chamberlain's state law claims, we dismiss those claims without prejudice to their refiling in state court.

### Background [3]

In or before 1963, Maremont acquired a controlling interest in Saco–Lowell Shops, located in Saco, Maine, which Maremont renamed as the New England Division of Maremont. Maremont engaged in, among other things, the manufacture and sale of various weapons to the United States government (the "government"). Maremont subsequently changed the New England Division's name to Saco Defense Systems Division, which remained a division of Maremont until December 31, 1984. On that date, Maremont trans-

ferred, sold and assigned all of the business, assets and contracts of Saco Defense Systems Division to Saco Defense, Inc. ("Saco"),[4] a shell corporation it had established in 1979. Until May 14, 1987, Maremont owned all outstanding shares of Saco.

Beginning in approximately 1982, the Air Force awarded Saco a series of contracts for the production of 30mm gain twist gun barrels. Under these contracts, Saco ultimately produced and delivered to the government more than six thousand 30mm gain twist barrels, all but ninety-eight of which were shipped to the government before Chamberlain acquired Saco. The Air Force paid Saco over $9,000,000 for the gun barrels.

During the summer of 1986, Chamberlain became interested in the possibility of acquiring Saco. Pursuant to a purchase agreement dated May 14, 1987, Chamberlain acquired from Maremont all outstanding shares of Saco for a total purchase price of $32,925,-942.00.

In March 1987, before Chamberlain's acquisition of Saco had been completed, Saco personnel allegedly learned from a representative of General Electric that the Air Force was investigating Saco's 30mm gun barrels. General Electric was under contract with the Air Force to test some of those gun barrels. It is undisputed that in December 1987, the government notified Saco, now a wholly-owned subsidiary of Chamberlain, of potential quality problems with the 30mm gain twist gun barrels. In October 1988, the government issued a latent defects letter to Saco.

According to Chamberlain, Saco personnel, with the knowledge of Maremont, engaged in several improper practices to accomplish delivery of nonconforming 30mm gun barrels to the government prior to Chamberlain's ac-

---

1. When Maremont first moved for summary judgment, we granted the motion as to two of Chamberlain's three RICO claims in its Revised Second Amended Complaint. *See* Mem. Op. and Order, December 15, 1993, 1993 WL 535420.

2. Maremont raised other issues in its current motion for summary judgment, which were not raised in its original motion. We have declined to consider those issues at this time. (Chamber-

lain's Mot. to Strike, Ex. A, Transcript of Proceedings, Nov. 2, 1995, at 6–7.)

3. These facts are taken from the parties' agreed statement of uncontested facts and agreed statement of contested issues of fact and law in their final pretrial order filed on April 19, 1994.

4. As used herein, "Saco" refers to both Saco Defense Systems Division and Saco Defense, Inc.

quisition of Saco. One of these practices was known as "motherlotting," by which a permanent set of conforming goods was repeatedly submitted to the government for inspection and then later switched with nonconforming goods. Another practice was "salting," by which nonconforming goods were positioned in a lot so as to hide them from government inspectors. A third practice, which the parties call the "orange card" system, involved tagging products which did not conform to specifications in some minor way not affecting form or function and delivering them to the government in their defective condition. None of these "practices" were disclosed to Chamberlain either before or at the time of its purchase of Saco.

When Chamberlain learned of the problems, it hired outside counsel and conducted an investigation of Saco's practices. On December 22, 1988, Duchossois Industries, Inc. (Chamberlain's parent corporation), Chamberlain and Saco made an oral voluntary disclosure to the Office of the Inspector General of the Department of Defense ("DoD–IG") and sought admission into the Department of Defense's Voluntary Disclosure Program. At the same time, Chamberlain informed Maremont by letter that it was investigating these alleged deficiencies in Saco's production of 30mm gun barrels and that it might seek remedies against Maremont, including but not limited to indemnification under the purchase agreement. On March 31, 1989, Duchossois, Chamberlain, and Saco submitted a written voluntary disclosure report to the DoD–IG. On April 27, 1992, they entered into a settlement agreement with the government pursuant to which they paid the government $2,376,-700.00.

Chamberlain filed this action on December 10, 1990. In its Revised Second Amended Complaint, which is currently pending, it brought a RICO claim under section 1962(c) against Maremont (Count I), which is still pending; a RICO claim under section 1962(c) against Arvin, Maremont's parent corporation (Count II), on which we have already granted Arvin summary judgment; a RICO claim under section 1962(a) against Maremont (Count III), on which we have already

granted Maremont summary judgment; a common law fraud claim against Maremont (Count IV), which is still pending; a common law fraud claim against Arvin (Count V), on which we have already granted Arvin summary judgment; a breach of contract claim against Maremont (Count VI), which is still pending; and an indemnification claim against Maremont (Count VII), which is also still pending.

### Discussion

### I. Motion for Leave to File Amended Answer and Counterclaim

■ Maremont seeks leave to file an amended answer and counterclaim on the grounds that Saco assigned any claims it may have against Maremont to Chamberlain in a written assignment executed in May 1995 (the "assignment"). According to Maremont, the assignment means that Chamberlain is not longer suing merely on its own behalf to recover damages that it alone allegedly incurred, but rather that Chamberlain is also suing as Saco's assignee for damages incurred by Saco. Maremont contends that, as a result of the assignment, it now has available to it defenses and claims against Saco that it could not have asserted previously against Chamberlain. Specifically, Maremont asserts that it did not know of Saco's fraud upon the government, and that if Maremont is liable to Chamberlain for failing to disclose that fraud, then Maremont is entitled to indemnification from Saco in the same amount.

Chamberlain responds that the assignment is much ado about nothing. It expressly states that it is not suing as Saco's assignee and is not asserting any claims that Saco may have against Maremont. In fact, at oral argument on this motion, Chamberlain's counsel acknowledged that Saco most likely has no claims against Maremont. Maremont responds that, even without the assignment, the items Chamberlain has identified as its damages are largely expenses which Saco, not Chamberlain, incurred as a consequence of the government's investigation of the nonconforming gun barrels and the subsequent settlement, and that Chamberlain may not recover expenses paid by Saco. Moreover,

according to Maremont, in representing to Chamberlain that there had been no fraud upon the government, it relied upon Saco's representation to it; in other words, Maremont insists that it is as much a victim of Saco's fraud as is Chamberlain. Therefore, it reasons, to the extent that it is liable to Chamberlain because of the misrepresentations in connection with the sale of Saco, then Saco is liable to Maremont in the same amount. In essence, Maremont seeks indemnification from Saco if Maremont is found liable to Chamberlain.

The flaw in Maremont's argument is that its liability to Chamberlain, if any, would be based upon its own conduct, not Saco's, and therefore it has no legal recourse against Saco. Chamberlain is seeking to hold Maremont directly liable for fraud, which it may do only if it can show that Maremont participated in the fraud. *Esmark, Inc. v. National Labor Rel. Bd.,* 887 F.2d 739, 755–56 (7th Cir.1989) (parent corporation may be held liable for subsidiary's wrongful conduct where parent directly participated). It is Maremont's own conduct, not Saco's, which will provide the basis for Maremont's liability to Chamberlain if Chamberlain wins this case. Obviously, Maremont may not seek indemnification from Saco for Maremont's own misconduct, for Saco has no legal liability for that.

If Maremont is right that Saco pulled the wool over its eyes, its relief lies not in its ability to seek indemnification from Saco, but in its ability to defend itself successfully on Chamberlain's claims against it. In other words, if Maremont successfully shows that Saco defrauded the government without Maremont's knowledge and then lied to Maremont in connection with the sale to Chamberlain, then Maremont will be found not liable to Chamberlain, for Chamberlain will have failed to prove that Maremont participated in the fraud. And so Maremont will not need to be indemnified by Saco.

Because Chamberlain is not asserting any claims Saco might have against Maremont (of which there apparently are none), and because Maremont has no legal basis for seeking indemnification from Saco if Maremont is found liable to Chamberlain, Maremont's motion for leave to file an amended answer and counterclaim is denied.

## II. *Motion for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure allows us to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In considering the evidence submitted by the parties, we do not weigh it or determine the truth of asserted matters. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). We are to view all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Transamerica Ins. Co. v. South,* 975 F.2d 321, 327 (7th Cir.1992). "If no reasonable jury could find for the party opposing the motion, it must be granted." *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir.1995) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510).

Maremont seeks summary judgment on Count I on the grounds that Chamberlain has failed to allege and cannot prove that the RICO "person" is sufficiently distinct from the RICO "enterprise." Section 1962(c) of RICO, under which Count I is brought, makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c) (1984). Chamberlain claims that Maremont was the "person" and that Maremont and Saco, its wholly-owned subsidiary, were the "enterprise." (Chamberlain refers to this Maremont–Saco grouping as an association-in-fact.) Chamberlain specifically alleged that:

> From on or about January 1, 1985, to on or about May 15, 1987, Maremont, being associated with an enterprise … that is, an association-in-fact of Maremont and Saco … knowingly and intentionally, conduct and participate, directly and indirectly, in the conduct of the enterprise's affairs

through a pattern of racketeering activity. . . .

(Rev.Sec.Am.Compl., ¶ 41.) Chamberlain's pattern of racketeering activity consisted of two separate schemes: one to defraud the government by manufacturing and selling non-conforming weapons and the other to defraud Chamberlain by concealing the fraud upon the government when Chamberlain purchased Saco from Maremont.

In its original motion for summary judgment, Maremont argued that the "person" (Maremont) was not sufficiently distinct from the "enterprise" (Maremont and Saco), violating the "distinctiveness" requirement of section 1962(c). In denying the motion, we held,

> Certainly, Maremont, Arvin [5] and Saco are distinct from one another as legal entities. They are also distinct from the collective association in fact of Maremont and Saco as pled in the Revised Second Amended Complaint.

(Mem. Op. and Order, December 15, 1993, at 20, 1993 WL 535420, at 9.)

Maremont asks us to reconsider that determination in light of the Seventh Circuit's decision in *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640 (7th Cir.1995), which, Maremont asserts, constitutes a change in the law. Maremont argues that Chamberlain cannot rely on the former status of Maremont and Saco as parent and subsidiary to establish distinctiveness because there is no allegation (nor can there be one under the evidence adduced in discovery) that Maremont (the person) played an active role in the racketeering activity that is separate and distinct from the conduct of Maremont–Saco (the enterprise).

Chamberlain disagrees, arguing that *Richmond* is entirely consistent with the Seventh Circuit's earlier pronouncements on "distinctiveness." [6] It contends that both the facts

and its allegations as to Maremont and Saco sufficiently distinguish the separate roles played by each. Specifically, it asserts that Saco, with the knowledge of Maremont, defrauded the government by making false statements and false claims while knowingly selling the government non-conforming and indeed defective rifle barrels. Then, Chamberlain argues, Maremont compounded the fraud by representing to it, when it purchased Saco, that neither Saco nor Maremont had engaged in any fraud upon the government.

We address first the Seventh Circuit's decision in *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640 (7th Cir.1995), in which the Seventh Circuit affirmed the district court's dismissal of the RICO complaint because the plaintiff's allegations of "person" and "enterprise" were not sufficiently distinct. There, plaintiff Richmond alleged that defendants Nationwide Cassel L.P. ("Cassel"), Nationwide Acceptance Corporation ("Nationwide Acceptance"), and N.A.C. Management Corporation ("NAC") violated section 1962(c) of RICO when they forced her to pay for excessive automobile insurance. 52 F.3d at 641–42. Cassel was a limited partnership, of which NAC was the general partner and one percent owner, and Nationwide Acceptance the other partner and ninety-nine percent owner. *Id.* at 642.

The complaint in *Richmond* alleged that the persons were the three defendants. *Id.* at 646. It also alleged two enterprises, one of which was the "Nationwide Group," an association-in-fact made up of the three defendants and other companies, including several insurance companies, under common control. *Id.* at 642. The other was the Nationwide Group and the car dealers with which it did business. *Id.* at 642–43. The persons were the three defendants. *Id.* at 646. The scheme to defraud rested on Cas-

---

5. Arvin, which became Maremont's parent corporation only seven months before Saco was sold to Chamberlain, was originally named as a defendant. In the Memorandum Opinion and Order of December 15, 1993, in which we denied Maremont's original request for summary judgment on Count I, we granted Arvin summary judgment on Counts II and V, the only counts in which it was named. *See* Mem. Op. and Order,

December 15, 1993, at 32, 1993 WL 535420, at 14.

6. The question is not crucial here, for we have considerable latitude in deciding to reconsider our earlier ruling, *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir.1995), even if *Richmond* changed nothing.

sel's and Nationwide Acceptance's requirement that Richmond purchase "forced placed insurance" in excess of the coverage authorized by her automobile sales contract. *Id.* at 642.

In analyzing whether Richmond had alleged a "person" and an "enterprise" that were sufficiently distinct, the Seventh Circuit explained the "distinctiveness" requirement:

This court has dealt several times with the question of whether the person and the enterprise are distinct entities. *Haroco [v. American Nat'l Bank,* 747 F.2d 384 (7th Cir.1984), *aff'd on other grounds,* 473 U.S. 606 [105 S.Ct. 3291, 87 L.Ed.2d 437] (1985) ] established that an individual corporation could not be held liable as a "person" that conducted its own affairs through a pattern of racketeering activity, but a subsidiary that conducted the affairs of its parent corporation could be found liable under § 1962(c).... 'The only important thing is that [the enterprise] be either formally (as when there is incorporation) or practically (as when there are other people besides the proprietor working in the organization) separable from the individual.' *McCullough [v. Suter],* 757 F.2d [142] at 144 [ (7th Cir.1985) ].

. . . .

In this case, Ms. Richmond's claim begins and ends with the fraud allegedly committed by Nationwide Acceptance and Cassel. There is no showing that other members of the alleged association in fact participated in the fraud, or that the persons, Nationwide Acceptance and Cassel, conducted the affairs of the alleged enterprises (rather than their own affairs) through a pattern of racketeering activity, as required by *Reves [v. Ernst & Young],* 507 U.S. [170] at 184, 113 S.Ct. [1163] at 1173 [122 L.Ed.2d 525].

*Id.* at 646–47.

Significantly, in *Richmond,* the Seventh Circuit endorsed the approach used by the Third Circuit in *Brittingham v. Mobil Corp.,* 943 F.2d 297 (3d Cir.1991), a widely-cited decision on the distinctiveness issue in the context of affiliated corporations. 52 F.3d at 647. As the Seventh Circuit noted, in *Brittingham* the Third Circuit rejected an attempt " 'to circumvent the distinctiveness requirement by alleging enterprises that are merely combinations of individuals or entities affiliated with a defendant corporation,' " 943 F.2d at 301–02, because,

"when the defendant is itself a collective entity, it is more likely that the alleged enterprise is in reality no different from the association of individuals or entities that constitute the defendant or carry out its actions."

*Id.* at 302. On this basis, the Third Circuit rejected the plaintiff's section 1962(c) claim where it was alleged that defendants Mobil Corporation ("Mobil") (the parent corporation) and Mobil Chemical Company ("Mobil Chemical") (a unincorporated division of Mobil's wholly-owned subsidiary, Mobil Oil Corporation) conducted the affairs of an association-in-fact enterprise comprised of Mobil, Mobil Chemical, and several outside advertising agencies by engaging in a scheme to defraud the public by misrepresenting the degradable qualities of trash bags. 943 F.2d at 301–02. In *Richmond,* the Seventh Circuit also noted the decision of the Second Circuit in *Riverwoods Chappaqua Corp. v. Marine Midland Bank,* 30 F.3d 339 (2d Cir. 1994). *Richmond,* 52 F.3d at 647. In *Riverwoods,* the Second Circuit held that the person and the enterprise were not sufficiently distinct where the person was the defendant bank and the enterprise was an association-in-fact of the bank and a group of employees within the bank, the "Restructuring Group." 30 F.3d at 344. The Second Circuit reasoned:

Because a corporation can only function through its employees and agents, any act of the corporation can be viewed as an act of such an enterprise, and the enterprise is in reality, no more than the defendant itself. [Citation omitted.] Thus, where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation. [Citation omitted.]

*Id.*

Since deciding *Brittingham,* the Third Circuit has twice addressed the scenario in

which the parent corporation was the RICO person and the subsidiary was the enterprise. In both *Glessner v. Kenny*, 952 F.2d 702 (3d Cir.1991), and *Lorenz v. CSX Corp.*, 1 F.3d 1406 (3d Cir.1993), the court rejected the section 1962(c) claims because the person and the enterprise were not sufficiently distinct. In *Lorenz*, the Third Circuit reasoned:

> After *Brittingham* and *Glessner*, it is still theoretically possible for a parent corporation to be the defendant [the person] and its subsidiary to be the enterprise under section 1962(c). However, *the plaintiff must plead facts which, if assumed to be true, would clearly show that the parent corporation played a role in the racketeering activity which is distinct from the activities of its subsidiary.* A RICO claim under section 1962(c) is not stated where the subsidiary merely acts on behalf of, or to the benefit of, its parent.

1 F.3d at 1412 (emphasis added).

The First Circuit has also addressed the "distinctiveness" issue since we decided Maremont's original motion for summary judgment. In *Compagnie De Reassurance D'Ile de France v. New England Reins. Corp.*, 57 F.3d 56 (1st Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 564, 133 L.Ed.2d 490 (1995), it found that the persons, consisting of a reinsurer, an underwriter, and a primary insurer, were not sufficiently distinct from the enterprise, a wholly-owned subsidiary of the underwriter. *Id.* at 92. The court determined that where the subsidiary had been first a division and later a wholly-owned subsidiary of the underwriter, the subsidiary's employees were in reality employees of the underwriter itself. *Id.* The court also noted that there was no evidence that the subsidiary took any action independent of its parent. *Id.*

We do not mean to suggest that a section 1962(c) can never be stated where the person and the enterprise are comprised of corporations. Such a claim was held to be valid in *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256 (2d Cir.1995), *cert. denied*, — U.S.

—, 116 S.Ct. 916, 133 L.Ed.2d 846 (1996). In that case, the RICO persons were two corporations, Kalon Systems, Inc. ("Kalon"), and Andra Systems, Inc. ("Andra"), along with Charles Schnabolk ("Schnabolk"), who was the owner and president of Kalon and the one-time owner and vice president of Andra. *Id.* at 258. Kalon installed security equipment, while Andra manufactured alarm systems, electromagnetic locks, and related items. *Id.* The RICO persons were defendants Kalon, Andra, and Schnabolk, while the enterprise was an association-in-fact of the three defendants.[7] In rejecting the argument that the RICO persons and the enterprise were not separate and distinct, the Second Circuit noted that the facts were distinguishable from those in *Riverwoods*. *Id.* at 263. The court reasoned that Kalon and Andra were separate corporations which were independent entities, and that each stood to benefit from Schnabolk's misconduct. *Id.* In addition, the court noted that the corporations had distinct lines of business and were active, operating businesses.[8] *Id.* at 263–64. As the court explained:

> One objective of the unlawful conduct was to create multiple sources for rumors concerning the supposed dangers of Securitron locks. The participation of Andra and Kalon in that scheme was efficacious partly because each of them was an actual ongoing business with a presence in the marketplace. Thus, in the scheme to obtain customers for electromagnetic lock installations for New York high schools in 1989, the two corporations made coordinated attacks on the Securitron locks. [Footnote omitted.] The use of particular stationery at particular times was not random; the jury could conclude that there was a deliberate effort to use both independent entities to give a spurious validity to the rumors.

*Id.* at 264. As this discussion makes clear, the Second Circuit concluded that Kalon and Andra had played distinct roles in the racketeering activity. The court held that the association-in-fact enterprise consisting of all

---

7. The membership in the association-in-fact enterprise was apparently a question given to the jury to decide. *Id.* at 262.

8. Kalon and Andra were not related corporations, although Schnabolk was an officer of each. *See* 65 F.3d at 258.

three RICO persons was sufficiently distinct from the enterprise to state a valid claim under section 1962(c). *Id.* at 264.

▮▮▮ We have found no cases from the courts of appeals addressing the precise factual scenario before us, in which the parent (Maremont) is the person and the parent and its wholly-owned subsidiary (Maremont–Saco) are, collectively, the enterprise. So, we have considered the fates of section 1962(c) claims presenting similar scenarios. Under *Haroco,* it is impossible to state a section 1962(c) claim where a single corporation is both the person and the enterprise. *Haroco v. American Nat'l Bank,* 747 F.2d 384, 400 (7th Cir.1984), *aff'd on other grounds,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). Therefore, Chamberlain could not have alleged that Maremont was both the person and the enterprise. And, under *Lorenz,* it is impossible to state a claim where the parent is the person and the subsidiary is the enterprise unless the activities of the parent and the subsidiary are clearly distinct. *Lorenz,* 1 F.3d at 1406. Here, Chamberlain's theory is that both Maremont and Saco committed a fraud upon the government by selling non-conforming gun barrels and both of them concealed the fraud from Chamberlain when Chamberlain bought Saco. So, Chamberlain could not have alleged on these facts that Maremont was the person and Saco alone was the enterprise, for their activities are not clearly distinct.

Yet all Chamberlain has done is allege that Maremont is the person and Maremont–Saco is the enterprise. If this is to succeed, then the Maremont–Saco association-in-fact must be, in some meaningful way, different from either Maremont or Saco individually. But it is not. To put it another way, Chamberlain has not alleged, and the facts have not shown, that Maremont conducted or participated in the affairs of the enterprise, as distinct from its own affairs (through itself and Saco), through a pattern of racketeering activity.

The definition of "enterprise," as developed in the case law, bolsters this conclusion.[9] In *Hartz v. Friedman,* 919 F.2d 469 (7th Cir.1990), the Seventh Circuit engaged in an instructive discussion of "enterprise":

> The Supreme Court has said that an enterprise is an "ongoing organization" and that "the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583 [101 S.Ct. 2524, 2528, 69 L.Ed.2d 246] (1981). The Seventh Circuit recently said an enterprise requires "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Jennings v. Emry,* 910 F.2d 1434, 1440 (7th Cir. 1990) [parenthetical omitted]. An enterprise is not merely a conspiracy; an enterprise must involve more than an agreement to commit a pattern of racketeering activity. *United States v. Neapolitan,* 791 F.2d 489, 501 (7th Cir.), *cert. denied,* 479 U.S. 939 [107 S.Ct. 421, 93 L.Ed.2d 371] (1986).

*Id.* at 471. But in this case, the elements of an ongoing structure and an organization capable of hierarchical or consensual decisionmaking are nothing more than the existing corporate structure of parent and subsidiary; while the element of a joint purpose is merely the normal business affairs of Maremont. Furthermore, in *National Org. for Women v. Scheidler,* 510 U.S. 249, ——, 114 S.Ct. 798, 804, 127 L.Ed.2d 99 (1994), the Supreme Court made clear that, under section 1962(c), the enterprise generally connotes the vehicle of the racketeering activity. Viewed through this lens, it is difficult to understand how Maremont used an association-in-fact of itself and Saco as a vehicle to commit the racketeering activity.

In addition, it is important to remember that the injury to Chamberlain was the concealment, when Maremont sold Saco to Chamberlain, of the earlier fraud upon the government. RICO requires that the plaintiff must have been injured in his business or property by the pattern of racketeering activity. 18 U.S.C. § 1964(c). Chamberlain could not have sued directly for the fraud

---

9. RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individu-

als associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

upon the government, for it incurred damages and thus suffered an injury to its property only when it purchased Saco without knowing of the earlier fraud. A corporate parent's sale of a wholly-owned subsidiary, even of a subsidiary which has committed an undisclosed fraud, surely constitutes the affairs of the parent, not of a separate and distinct entity made up of the parent and subsidiary combined.

The best argument against our conclusion that the Maremont–Saco enterprise is not sufficiently distinct from Maremont as the person is the one we relied upon in denying Maremont's original motion for summary judgment on this issue, namely, that under *Haroco*, a formal legal distinction between the two entities is sufficient. But *Haroco* dealt with a scenario in which the subsidiary was the person and the parent was the enterprise, 747 F.2d at 402–03, and the rule of distinct legal entities is much more difficult to apply where the enterprise is an association-in-fact which lacks its own identity or form under the law (although the constituent parts of the association-in-fact may each be distinct legal entities). Moreover, reading *Richmond* as requiring no more than separate legal entities renders its discussion of *Brittingham* and *Riverwoods* superfluous and its own result anomalous; if we applied the rule of distinct legal entities to the facts in those cases, each would have been decided differently than it was. The *Brittingham* court would not have rejected the allegations before it, for the persons, Mobil and Mobil Chemical, were separate legal entities from the members of the association-in-fact comprised of Mobil, Mobil Chemical, and several outside advertising agencies. Similarly, in *Riverwoods*, the defendant bank, the person, had a separate legal identity from the members of the association-in-fact enterprise of two loan officers and the bank. And, in *Richmond*, the defendant financing companies, the persons, had separate legal identities from the members of the two association-in-fact enterprises, which were, in one alleged enterprise, the same financing companies and several related companies under the control of one family, and, in the other alleged enterprise, the same financing companies, their related companies, and the car

dealers with whom they did business. Yet the Seventh Circuit found these allegations in *Richmond* insufficient.

As *Securitron* makes clear, our conclusion that section 1962(c) requires more than the existence of separate legal entities where the person and the enterprise are affiliated corporations does not eviscerate section 1962(c) in the corporate context. *Securitron* demonstrates that where the conduct of the corporations is sufficiently distinct, a valid section 1962(c) may exist. But, the facts in this case are much more similar to those in *Richmond* and *Brittingham* than they are to those in *Securitron*, and the result should be similar as well.

■ Chamberlain has failed to allege a RICO person and a RICO enterprise that are sufficiently distinct under section 1962(c), and so we grant Maremont's motion for summary judgment on Count 1. But, Count I was Chamberlain's sole surviving federal cause of action and the basis of our subject matter jurisdiction. Chamberlain's remaining claims are brought under state law and are before us pursuant to our supplemental jurisdiction. 28 U.S.C. § 1367(a). We have discretion either to retain or to dismiss those claims. 28 U.S.C. § 1367(c)(3); *see also NLFC, Inc. v. Devcom Mid–America, Inc.*, 45 F.3d 231, 237 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995). Where all federal claims are dismissed before trial, we should dismiss the supplemental claims absent extraordinary circumstances. *Wentzka v. Gellman*, 991 F.2d 423, 425 (7th Cir.1993). We are aware of no such circumstances here. Therefore, we decline to exercise our supplemental jurisdiction over Chamberlain's state law claims, and we dismiss them without prejudice to their refiling in state court. If Chamberlain believes that extraordinary circumstances do exist which would require us to exercise our supplemental jurisdiction over its state law claims, we invite it to file a motion to reconsider on that issue.

### Conclusion

For the forgoing reasons, we deny defendant Maremont's motion for leave to file

amended answer and counterclaim, and we grant defendant Maremont's motion for summary judgment on Count I. Because Count I was the basis of our subject matter jurisdiction, we dismiss Chamberlain's state law claims without prejudice to their being refiled in state court. This order is final and appealable.