Verna EMERY, on Behalf of Herself
and All Others Similarly
Situated, Plaintiff,

v.

AMERICAN GENERAL FINANCE, INC.
and American General Finance
Corp., Defendants.

No. 94 C 5181.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 28, 1996.

Daniel A. Edelman, Cathleen Combs Cohen, Tara Leigh Goodwin, Michelle Ann Weinberg, Edelman & Combs, Chicago, IL, James R. Daly, Robert C. Micheletto, Jayant W. Tambe, Jones, Day, Reavis & Pogue, Chicago, IL, James Eric Vander Arend, Gessler, Hughes & Socol, Ltd., Chicago, IL, O. Randolph Bragg, Chicago, IL, Cephus Knox McLaney, III, McLaney & Associates, P.C., Montgomery, AL, for plaintiff Emery et al.

Jonathan N. Ledsky, Craig Allen Varga, Varga, Berger, Ledsky & Hayes, Chicago, IL, for defendant American General Finance, Inc.

## *MEMORANDUM OPINION AND ORDER*

GETTLEMAN, District Judge.

Plaintiff Verna Emery has brought a two count putative class action amended complaint against defendants American General Finance Corp. ("AGFC") and American General Finance, Inc. ("AGFI"). Count I alleges a violation of the Racketeer Influence and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and is brought against only AGFC. Count II, brought against both defendants, alleges violations of the consumer fraud statutes of all fifty states and the District of Columbia. Defendant AGFC has moved to dismiss the RICO count pursuant to Fed.R.Civ.P. 12(b)(6), arguing that it fails to allege: (1) a RICO "enterprise" distinct from the RICO "person"; (2) that AGFC personally conducted or participated in the affairs of the alleged enterprises; and (3) a pattern of racketeering activity. Both defendants have moved to dismiss the consumer

fraud claims, arguing that they cannot state a claim because AGFI's disclosures complied fully with the requirements of the Truth–In–Lending Act. For the reasons set forth below, the court agrees that Count I fails to allege both an enterprise distinct from the RICO person and a pattern of racketeering activity and, therefore, is dismissed. Because Count I is the only basis for this court's original jurisdiction, Count II is also dismissed.

## BACKGROUND

Plaintiff originally brought this action as a one count RICO complaint against AGFI. This court dismissed that suit, concluding that absent a duty to disclose, AGFI could not be found liable for mail fraud. *Emery v. AGFI*, 873 F.Supp. 1116 (N.D.Ill.1994). The Seventh Circuit reversed, holding that the complaint alleged adequately an intentional half-truth. *Emery v. AGFI*, 71 F.3d 1343, 1348 (7th Cir.1995). In reaching its decision, however, the Seventh Circuit noted that the complaint failed to plead a pattern of racketeering activity because it pled only one instance of mail fraud particularly, and then alleged that defendant did the same thing to others. The court specifically stated that "such details would not be necessary to identify additional members of the plaintiff's class, but are necessary to identify a violation of RICO, which requires (in this case) more than one fraud, and only one is alleged to have been perpetrated against Emery herself." *Id.* at 1348.

Heeding the Seventh Circuit's warning, on remand plaintiff filed an amended complaint, totally restructuring her lawsuit. The amended complaint seeks to impose RICO liability not on AGFI, the original defendant, but against its parent, AGFC. Plaintiff has also added additional allegations as to two other AGFI customers, seeking to cure the lack of proper, specific allegations of pattern of racketeering activity. As set forth below, however, plaintiff's restructuring and re-pleading works to her detriment, not benefit,

and she has failed to allege a RICO enterprise distinct from the defendant AGFC or a pattern of racketeering activity.

## FACTS[1]

According to plaintiff's brief, the complaint alleges that defendants engaged in "flipping" or inducing the refinancing of loans through deception and concealment: Basically a finance company solicits its customers to make additional loans. Instead of making another loan, the additional funds are "extended by refinancing an existing loan," resulting in greater expense to the customer. Specifically, the complaint alleges that plaintiff signed a note with AGFI on July 14, 1992. Shortly before January 29, 1993, AGFI solicited plaintiff by mail to borrow additional funds. Plaintiff alleges that the flyer sent to her is deceptive and misleading.[2] Plaintiff responded to the solicitation, borrowing additional funds. Rather than issuing her a new loan, AGFI refinanced her original loan. AGFI did not tell plaintiff that a refinancing would be more expensive. Plaintiff alleges that it was AGFI's policy and practice to repeatedly solicit existing loan customers by mail to borrow additional funds, using communications such as the flyer sent to her, which lead customers to believe that they were being offered a new and separate loan. AGFI then provides the funds through a refinancing, resulting in greater expense, and conceals and omits to reveal that the refinancing is more expensive. Plaintiff alleges that AGFI markets its loans to working class borrowers who generally do not understand the computations necessary to determine the comparative cost of a new loan versus refinancing.

Plaintiff describes AGFC as a financial services company which, through wholly owned subsidiaries, including AGFI, engages in consumer financing credit business. AGFC is the sole shareholder and parent company of AGFI. AGFI is alleged to be an instrumentality of AGFC through which AGFC carries out some of its business.

---

**1.** The factual allegations are taken from plaintiff's amended complaint.

**2.** A detailed description of the facts of this case and a copy of the flyer sent to plaintiff can be found in this court's previous opinion, *Emery v. AGFI*, 873 F.Supp. 1116 (N.D.Ill.1995).

AGFC is wholly owned by non-defendant American General Finance ("AGF"), a holding company. According to paragraph 10 of the complaint, all of AGFI's business is conducted in accordance with the direction given and policy set by AGFC, and that all income and revenue from such business activities, including the alleged illegal activities, are reported on AGFC's or AGC's financial statements and are used by AGC to obtain money from the investing public and financial institutions. Paragraph 10 further alleges that "the subsidiaries are maintained for regulatory reasons and to limit the liability of AGC and AGFC under consumer credit laws. The business is operated centrally, without regard to their nominal existence."

With respect to Count I, the complaint alleges three RICO enterprises: (1) AGC; (2) the corporate group headed by AGC (AGC, AGFC, AGFI, and other wholly owned subsidiaries); and (3) the "AGFC group" (AGFC, AGFI, and other unnamed affiliated companies directly or indirectly owned by AGFC). Defendant AGFC is alleged generally to have conducted or participated in the affairs of each of the alleged enterprises through a pattern of mail fraud. Specifically, plaintiff alleges that AGFC devised and implemented a scheme or artifice to: (a) repeatedly solicit existing, unsophisticated loan customers to request additional funds from AGFI and other AGFC subsidiaries using the U.S. mails; (b) deliberately mislead customers into believing that they were going to receive a new, distinct loan; (c) provide existing loan customers with additional funds through refinancing of the original loan, rather than making a new loan, costing the customers additional funds; and (d) concealing or omitting to reveal that the cost of refinancing was greater than obtaining a new loan.

In Count II, plaintiff realleges all of the factual allegations contained in Count I, and further alleges that such facts constitute a violation of each state and the District of Columbia's consumer fraud statutes.

### DISCUSSION

AGFC has moved to dismiss Count I, arguing that plaintiff has failed to allege that the RICO "person" is sufficiently distinct from the RICO "enterprise." Section 1962(c), pursuant to which plaintiff brings Count I, provides that "[I]t shall be unlawful for any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt." 18 U.S.C. § 1962(c). Thus, to state a claim under § 1962(c) a complaint must allege sufficiently: (1) the existence of an enterprise that affects interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated in the conduct of the enterprise's affairs; and (4) that the defendant participated through a pattern of racketeering activity. *Dennis v. Peoples Gas Light & Company,* 1990 WL 70372 (N.D.Ill.1990).

As noted above, plaintiff has alleged three separate enterprises. AGFC asserts that none is sufficiently distinct from AGFC, the alleged RICO person, thereby violating the distinctiveness requirement of § 1962(c). RICO defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). It is now beyond dispute that § 1962(c) requires separate entities as the RICO person and the enterprise which has its affairs conducted through a pattern of racketeering activity. *Haroco, Inc. v. American Nat'l Bank & Trust Co.,* 747 F.2d 384, 400 (7th Cir.1984), aff'd on other grounds, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). It is also true that a subsidiary acts on behalf of, and thus conducts the affairs of, its parent corporation. *Id.* at 402–403. Therefore, plaintiff argues, she has properly alleged AGC as the RICO enterprise and AGFC, which is 100% owned by AGC, as the RICO person.

The problem with this argument is that plaintiff's complaint does more than merely allege the parent subsidiary relationship. The complaint alleges that all of the businesses are conducted in accordance with di-

rections given and policy set by AGFC. The complaint further alleges that the businesses are operated centrally without regard to their nominal existence, and that it is AGFC that controls and operates all of the corporate group including AGC. In essence, plaintiff alleges that the corporations ignore all legal formalities. Accepting these allegations as true, as the court must, AGFC is at all times conducting its own affairs, and not the affairs of AGC, leaving no distinction between the RICO person and the enterprise. Under *Haroco,* this is not covered by § 1962(c), because liability depends on showing that the defendant conducted or participated in the conduct of the enterprise's affairs, not just its own affairs. *Reves v. Ernst & Young,* 507 U.S. 170, 184–86, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993).

Moreover, plaintiff's attempts in her memorandum to elaborate on the relationship between AGC and AGFC by suggesting that AGC "determines what businesses AGFC conducts" is to no avail. "The pleading itself must state the essential elements of the RICO action or it is worthy of dismissal." *Richmond v. Nationwide Cassel, L.P.,* 52 F.3d 640, 646 (7th Cir.1995).

Plaintiff's reliance on cases such as *Stevens v. Associates Finance, Inc.,* 1996 U.S.Dist. LEXIS 1912 (N.D.Ill.1996), and *Butler v. Platte Valley Mortgage Corp.,* 94 C 3327, 1995 WL 875412 (N.D.Ill. October 25, 1995), is also misplaced. In both of those cases, the RICO person (the defendant) was alleged to have conducted the affairs of the enterprise (generally a larger corporate group) by executing the alleged fraud. The defendant was part of a financial network, but personally engaged in the fraudulent activity which served to benefit the enterprise as a whole. In each case it was alleged that the defendant conducted, through a pattern of racketeering activity, certain affairs delegated to it by the enterprise. In the instant case, the alleged RICO person is the middle corporation, and is not alleged to have executed the fraud. To the contrary, AGFC is merely alleged to have directed the fraud through general corporate policies for the group of corporations "operated centrally without regard to their nominal existence." The enter-

prise, consisting of the parent corporation, a holding company, is not alleged to have done anything, including setting any corporate policy, legitimate or illegitimate. Indeed, the complaint can only be read to mean that defendant AGFC sets corporate policy for the entire group of corporations, leading back to the conclusion that the defendant is conducting its own affairs, not the affairs of a separate enterprise.

This reasoning compels rejection of plaintiff's other alleged enterprises as well. Much has been written about whether one of a group of interrelated corporations can be a RICO person conducting the affairs of the group. See e.g., Judge Plunkett's thoughtful analysis in *Chamberlain Manufacturing Corporation v. Maremont Corp.,* 919 F.Supp. 1150, 1153 (N.D.Ill.1996). In *Richmond,* the Seventh Circuit endorsed the approach used by the Third Circuit in *Brittingham v. Mobil Corp.,* 943 F.2d 297 (3rd Cir.1991), which rejected an attempt to circumvent the distinctiveness requirement by alleging enterprises that are merely combinations of individuals or entities affiliated with a defendant corporation. In *Lorenz v. CSX Corp.,* 1 F.3d 1406 (3rd Cir.1993), the court held that after *Brittingham* and *Glessner* (*Glessner v. Kenny,* 952 F.2d 702 (3rd Cir.1991)), "it is still theoretically possible for a parent corporation to be the defendant and the subsidiary to be the enterprise under § 1962(c). However, the plaintiff must plead facts which, if assumed to be true, would clearly show that the parent corporation played a role in the racketeering activity *which is distinct from the activities of its subsidiary.* A RICO claim under § 1962(c) is not stated where the subsidiary merely acts on behalf of or to the benefit of its parent." *Lorenz,* 1 F.3d at 1412 (emphasis added).

In *Chamberlain,* the court was faced with the situation where the parent was the alleged RICO person, and the parent and its wholly owned subsidiary comprised the alleged enterprise. The court, after analyzing *Haroco, Lorenz,* and *Richmond,* concluded that a RICO violation could be pleaded in such a situation, but required specific allegations indicating how the activities of the parent were distinct from those of the enter-

prise. In that case, it was clear that the plaintiff could not have alleged that the parent was the person and the subsidiary alone was the enterprise because the activities were not clearly distinct. Yet, all that the plaintiff had done was to allege that the parent was the person and the parent-subsidiary group was the enterprise, without alleging that the enterprise was in some meaningful way different from either the parent or the subsidiary individually. The court, therefore, dismissed the RICO claim.

The situation in the instant case is similar. Plaintiff has been unable to allege that the activities of AGFC are in any meaningful way different from those of the subsidiary AGFI, or the group of corporations together. Indeed as discussed previously, the complaint alleges that the corporations are "operated centrally without regard to their nominal existence." Accordingly, the court concludes that the complaint fails to allege that AGFC has participated in the affairs of an enterprise distinct from itself through a pattern of racketeering activity.

■ There are numerous other deficiencies in the complaint as well. For example, defendant argues that plaintiff has failed to plead that it personally conducted or participated in the affairs of any alleged enterprise. It is clear that liability under RICO is limited to persons who have "personally committed" at least two predicate acts of racketeering. *Dudley Enterprises, Inc. v. Palmer Corp.,* 822 F.Supp. 496, 502 (N.D.Ill.1993). There is no vicarious liability under RICO. *SK Hand Tool Corp. v. Dresser Industries, Inc.,* 852 F.2d 936, 941 (7th Cir.1988).

In the instant case, it is AGFI that is alleged to have solicited plaintiff and made the misrepresentations or omissions. AGFC's only alleged involvement is that AGFI acted at its direction and pursuant to its policies. According to paragraph 64 of the complaint, AGFC devised and implemented the scheme to repeatedly solicit existing loan customers to request additional funds from AGFI and other AGFC subsidiaries. AGFC is not alleged to have actually committed any of the frauds, mailed any of the misleading flyers, or received any of the loan payments through the mail. It is not clear to this court that such bare bones allegations of fraud comply with Fed.R.Civ.P. 9(b), which requires that fraud be pled with particularity. Moreover, if all that AGFC has done is devise the scheme implemented by AGFI, that is consistent with the court's determination that AGFC is merely conducting its own affairs, not those of a distinct enterprise. If, however, AGFI's actions are distinct from AGFC's, then it appears that plaintiff is seeking to hold AGFC liable on a respondeat superior basis, which is clearly impermissible.

■ Finally, it is also clear that the complaint fails to allege a pattern of racketeering activity as required by the Seventh Circuit. Plaintiff's original complaint failed to plead a pattern of racketeering activity because it failed to set forth specific details of dates and other transactions involving any customer besides Emery. To eliminate this defect, plaintiff has added details surrounding the transactions involving two other AGFI customers. The complaint fails to allege, however, that either of these customers received a misleading solicitation through the mail, or even made their own payments through the mail. Therefore, it fails to allege more than one instance of mail fraud, and thus fails to allege a pattern of racketeering activity.

### CONCLUSION

It may be that plaintiff will be able to demonstrate that defendant's alleged "loan flipping" sinks beneath the "sleazy sales tactics," that troubled the majority of the appellate panel, to the level of fraudulent behavior. That would not, however, equate with a violation of the RICO statute, which is directed towards conduct far more pervasive than fraud alone. Plaintiff's remedy, if any, lies in the capable hands of the state courts.

For the reasons set forth above, the court concludes that plaintiff has failed to allege a RICO enterprise separate and distinct from the RICO person; seeks to impose respondeat superior liability; and fails to allege a pattern of racketeering activity. Accordingly, the court dismisses Count I. Because

Count I was the sole basis of federal jurisdiction, Count II is also dismissed.