**WILLIAMS ELECTRONICS GAMES, INC., Plaintiff,**

v.

**Gregory S. BARRY, Lorna Barry, Donald G. Barry, Kathleen M. Barry, James M. Garrity, Arrow Electronics, Inc., a Delaware corporation, Lawrence J. Gnat, Richard S. Slupik, Milgray Electronics, Inc., a New York corporation, Microcomp, Inc., an Illinois corporation, Linda J. Gnat, Etak, Ltd., an Arizona corporation, and American Progressive Circuits, Inc., an Illinois corporation, Defendants.**

No. 97 C 3743.

United States District Court,
N.D. Illinois,
Eastern Division.

March 5, 1999.

Jeffrey E. Kopiwoda, Brown, Udell & Pomerantz, Ltd., Chicago, IL, Glenn Allen Rice, Damon E. Dunn, Wilson P. Funkhouser, Steven F. Poe, Levin & Funkhouser, Ltd., Chicago, IL, Richard S. Wisner, Audrey A. Berish, Pretzel & Stouffer, Chtd., Chicago, IL, for Williams Electronic Games, Inc., plaintiff.

Edward Marvin Genson, Terence Patrick Gillespie, Genson, Steinback & Gillespie, Chicago, IL, Jeffrey Bruce Steinback, Northbrook, IL, Richard L. Manning, Burman & Manning, Chicago, IL, for Gregory S. Barry, defendant.

Harvey M. Silets, Kenneth Michael Kliebard, Jennifer Elizabeth Berner, Katten, Muchin & Zavis, Chicago, IL, for Microcomp Inc., Linda J. Gnat, Lawrence J. Gnat, defendants.

Daniel Thomas Hartnett, Martin, Brown, Sullivan & Bowman, Chicago, IL, Royal B. Martin, Jr., Martin, Brown & Sullivan, Ltd., Chicago, IL, for Richard S. Slupik, defendant.

Sally H. Saltzberg, P. Michael Loftus, Loftus & Saltzberg, P.C., Chicago, IL, for Donald G. Barry, Kathleen M. Barry, Etak Ltd., defendants.

Keith Edward Roberts, Sr., Robert S. Marcott, Keith Edward Roberts, Jr., Donovan & Roberts, P.C., Wheaton, IL, for American Progressive Circuits Inc., defendant.

John Nicholas Gallo, David Alan Goldberg, Eric Stephen Mattson, Jason R. Coyle, Christopher Niewoehner, Sidley & Austin, Chicago, IL, for Arrow Electronics, Inc., defendant.

James R. Ferguson, Lisa Beth Aidlin, Sonnenschein, Nath & Rosenthal, Chicago, IL, for Eilgray Electronics Inc., defendant.

Anthony Pinelli, Chicago, IL, for James M. Garrity, defendant.

James M. Garrity, Chicago, IL, pro se.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Williams Electronics Games, Inc. has brought an eight count second amended complaint ("complaint") against defendants Gregory S. Barry ("Barry"), Lorna Barry, Donald G. Barry, Kathleen M. Barry, James M. Garrity, Arrow Electronics, Inc. ("Arrow"), Lawrence J. Gnat ("Gnat"), Richard S. Slupik, Milgray Electronics, Inc. ("Milgray"), Microcomp, Inc., Linda J. Gnat, Etak, Ltd., and American Progressive Circuits, Inc. ("APC"). Counts I and II, brought against all defendants, allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Count III, against Arrow, Garrity, Milgray, Gnat and Slupik, allege Sherman Act violations, 15 U.S.C. § 1 *et seq.* Count IV, against all defendants, alleges state law claims for breach of fiduciary duty and inducement to breach fiduciary duty. Count V[1] against

1. Improperly labeled as Count IV.

all defendants, alleges common law fraud and conspiracy, and Count VI alleges violations of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* (Count VI), breach of contract and restitution against Barry (Count VII), and accounting and constructive trust (Count VIII). Defendants Arrow, Milgray and APC (the "corporate defendants") and defendant Garrity have moved to dismiss the RICO counts for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6). In addition, APC has moved for summary judgment on Counts IV, V and VI. For the reasons set forth below, defendants' motions are granted in part and denied in part.

### Motions to Dismiss

### Standard

Pursuant to Fed.R.Civ.P. 12(b)(6), a motion to dismiss should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of its claim. *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court accepts as true all of the plaintiff's well-pleaded factual allegations, and gives plaintiff the benefit of every reasonable inference that may be drawn from those facts. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### Facts[2]

For the period 1989 to 1997 plaintiff manufactured and sold coin operated pinball and video amusement games. It used electronic components manufactured or sold to it by defendants Arrow, Milgray and Microcomp. Defendant Barry was employed by plaintiff from August 1989 until January 1997 as either a Senior Buyer or Purchaser Manager. Barry was responsible for purchasing the electronic components to be used in amusement games.

Arrow is the world's largest distributor of electronic components and computer products to industrial and commercial customers such as plaintiff. Garrity was an Arrow salesman whose duties included selling electronic components to plaintiff. Plaintiff alleges that Garrity acted in furtherance of those duties as Arrow's agent and representative. According to the complaint, in the fourth quarter of 1990, beginning no later than January 1991, Garrity and Barry reached an agreement pursuant to which Barry would purchase on behalf of plaintiff products from Garrity at inflated prices. In return, Garrity provided Barry with monthly and annual year-end cash kickbacks.

During the period in question, Milgray also provided plaintiff with electronic component parts. Gnat was Milgray's branch manager for the northern district of Illinois. As such, Gnat's duties included supervising defendant Slupik, who was the Milgray salesman in charge of selling to plaintiff. Plaintiff alleges that Slupik, with the knowledge and encouragement of Gnat, also sold components to Barry at inflated prices and in return paid Barry monthly and year-end cash kickbacks.

Plaintiff further alleges that between 1992 and sometime in 1996 APC authorized Metro Teluse, Inc. and later Dyna Tech Sales, Inc. and their employees, particularly Harold Krause and Michael Iatomasi, to act as APC's agents to obtain and accept orders from plaintiff for purchase of electronic circuit boards. According to the complaint, APC sold electronic parts to plaintiff through orders that its agents, including Krause and Iatomasi, obtained under an arrangement in which they paid Barry consulting fees and/or commissions to obtain the orders.

Although the complaint is replete with factual detail as required by Fed.R.Civ.P. 9(b), reduced to its bare bones, the complaint alleges two fairly simplistic schemes. First, for most of the period in question Barry was plaintiff's primary buyer of electronic components. His duty was to purchase such components in the proper

---

**2.** The facts are taken from plaintiff's second amended complaint and RICO case statement which the court ordered plaintiff to file.

quantities at the lowest prices available. Starting sometime in early 1990 and continuing through March 1997, Barry devised a scheme in which he disregarded those duties by placing orders with defendants Arrow, Milgray, Microcomp, APC and others for components that were priced above those available from approved vendors, and for parts that Williams did not need. The result was increased commissions to the corporate defendants' salesmen (Gnat, Slupik and Garrity) who in turned paid Barry and / or his family members cash kickbacks. In addition, Barry concealed the excessive pricing by failing and refusing to bargain with defendants or other vendors to obtain price concessions and by instructing vendors to increase price quotations to create a false impression that market prices were higher than they actually were. Each summer from 1991 through 1995 Barry would meet with the salesmen, Garrity for Arrow and Slupik for Milgray, to review the level of purchases from the companies and determine the anticipated future purchases Barry could cause plaintiff to make, and to determine the amounts of payments to be made to Barry. Although the scheme worked slightly differently with APC than with the other corporate defendants, the basic concept, cash kickbacks for orders at inflated prices, was the same.

The second scheme alleged involved price fixing. During 1994 through 1996 plaintiff used thousands of erasable programmable read-only memory chips ("EPROMs") in its video games. Starting in the fourth quarter of 1994 through 1996 EPROMs were available from a variety of sources including franchised distributors as well as directly from one of the manufacturers of the EPROMs that Arrow and Milgray sold to plaintiff. Market prices for EPROMs generally declined during this period. From late 1990 and continuing until Barry left plaintiff in January 1997, Garrity knew that Slupik and Gnat were paying Barry for purchase orders for Microcomp and Milgray, and Slupik and Gnat knew that Garrity was paying Barry to obtain purchase orders for Arrow.

Plaintiff alleges that Slupik, Gnat and Garrity agreed with each other that they would cause Barry to place with Milgray approximately one-half of the dollar value of plaintiff's purchase orders that Barry placed with Arrow, and that Arrow and Milgray would not compete with each other or with Microcomp for orders from plaintiff. Sometime in September 1994, Slupik, Gnat and Garrity agreed that instead of reducing Arrow's and Milgray's prices to plaintiff for EPROMs, they would "fix, raise, stabilize and maintain prices." Therefore, from August 1994 through June 1996, Arrow and Milgray charged plaintiff identical prices for EPROMS and changed those prices simultaneously in equal amounts.

### Discussion

### Counts I and II (RICO)

As noted, the corporate defendants (Arrow, Milgray and APC) and Garrity have moved to dismiss Counts I and II for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6). The corporate defendants argue that the counts are defective because:

1.  they rely on the doctrine of respondeat superior;

2.  the alleged enterprise is an "association-in-fact" devoid of any structure separate and apart from the racketeering acts that defendants allegedly committed; and

3.  the counts fail to allege a "pattern of racketeering activity" as defined by the Seventh Circuit.

Garrity's motion relies on points two and three above, lack of an enterprise and failure to allege a pattern of racketeering activity.

Count I alleges a violation of 18 U.S.C. § 1962(c), which provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of

such enterprises' affairs through a pattern of racketeering activity or collection of unlawful debt.

To state a claim under § 1962(c), a complaint must allege:

1. the existence of an enterprise that affects interstate commerce;

2. that the defendant was employed by or associated with the enterprise;

3. that the defendant participated in the conduct of the enterprises' affairs; and

4. that the defendant participated through a pattern of racketeering activity.

*Emery v. American General Finance Inc.,* 938 F.Supp. 495, 497 (N.D.Ill.1996).

### A. Defendants' Participation in the Conduct of the Enterprise (Vicarious Liability)

■ The corporate defendants' first challenge to Count I is based on element number three. Defendants argue that the complaint fails to allege that they participated in or conducted the affairs of the alleged enterprise.[3] Liability under § 1962(c) attaches only to those persons associated with the enterprise who conduct or participate, "directly or indirectly in the conduct of such enterprises' affairs through a pattern of racketeering activity." In *Reves v. Ernst & Young,* 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the Supreme Court held that "to conduct or participate directly or indirectly in the conduct of such enterprises' affairs" one must participate in the operation or management of the enterprise itself. In so holding, however, the Court noted that liability under § 1962(c) is not limited to upper management, and that the "operation or management test will be satisfied by lower rung participants who are under the direction of upper management." *Id.* at 184, 113 S.Ct. 1163. The Seventh Circuit has adopted the First Circuit's interpretation of *Reves* as set forth in *United States v. Oreto,* 37 F.3d 739, 750 (1st Cir. 1994), which held that a defendant may participate in the conduct of an enterprise "by knowingly implementing decisions, as well as by making them." *MCM Partners, Inc. v. Andrews–Bartlett & Associates, Inc.,* 62 F.3d 967, 978 (7th Cir.1995).

In the instant case, plaintiff's complaint contains all the proper buzz words. Plaintiff alleges generally that the corporate defendants were "associated with an enterprise engaged in, or the activities of which affect interstate or foreign commerce, and conducted or participated directly or indirectly in the conduct of such enterprise's affairs through a pattern of racketeering activity." Neither the 30 page complaint nor the 37 page RICO case statement, however, contain any allegations that any of the corporate defendants, aside from the salesmen, had any knowledge of Barry's scheme to defraud, or that plaintiff was being overcharged in any way. Indeed, accepting the allegations of the complaint and the RICO case statement as true, absent the allegations against the individual salesmen, the corporate defendants were no more involved in the actual scheme than was plaintiff.

Thus, according to the complaint, the corporate defendants' "participation" was no different than plaintiff's (perhaps less, since plaintiff's employee, Barry, is the alleged mastermind), except that as a by-product of the fraud the corporate defendants profited, while plaintiff presumably lost profit. In any event, according to the allegations, any corporate defendant's liability must be based solely on the actions of its salesmen, utilizing the doctrine of respondeat superior or vicarious liability, which the corporate defendants assert has been rejected by the Seventh Circuit as inconsistent with § 1962(c).

■ Despite the lack of any factual allegation of direct involvement by the corporate defendants, plaintiff asserts that it

---

**3.** Plaintiff alleges six alternate enterprises. Each is an association-in-fact consisting of different combinations of defendant Barry and his relatives and the corporate defendants, as well as other individual defendants.

has stated a claim under RICO, arguing first that the claims against the corporate defendants are based on those defendants' status as RICO persons under § 1961(3), and second that except in limited situations not present here, respondeat superior liability has been accepted by the Seventh and most other circuits. Plaintiff's first argument can be summarily rejected. True, a corporation can be a "person" under RICO. 18 U.S.C. § 1961(3). But simply naming a corporation as a RICO defendant, without also alleging that the corporation itself somehow participated in the affairs of the RICO enterprise through a pattern of racketeering activity is insufficient. That would allow liability against a corporation that was "merely the passive instrument for the wrongdoing," a concept specifically rejected in *Haroco v. American National Bank and Trust Co.*, 747 F.2d 384, 401 (7th Cir. 1984).

That leaves vicarious liability as the only basis pleaded for the RICO claims against the corporate defendants, a basis that they argue was flatly rejected by the Seventh Circuit in *D & S Auto Parts Inc. v. Schwartz*, 838 F.2d 964–66 (7th Cir.1988). The applicability of vicarious liability to RICO has been the subject of extensive litigation in this circuit and others. The debate over the issue can be traced to the Seventh Circuit's decision in *Haroco,* in which the court held that § 1962(c) requires the RICO "person" to be a separate entity from the RICO enterprise which has its affairs conducted through a pattern of racketeering activity. 747 F.2d at 400. Thus, the corporate "enterprise" could not be held liable for the acts of its employees. The *Haroco* court noted, however, that § 1962(a) has no such "non-identity" requirement, and that under that subsection the liable person may be a corporation using the proceeds of a pattern of racketeering activity.

Following *Haroco,* in 1987 the Seventh Circuit stated that "vicarious liability has only limited application to civil RICO to avoid holding vicariously liable a corporation that was the victim of a RICO violation." *Liquid Air Corp. v. Rogers,* 834 F.2d 1297, 1306 (7th Cir.1987). The *Liquid Air* court recognized that to the extent that common law agency rules would result in holding a legitimate, infiltrated business vicariously liable, the rule would be at odds with the clear congressional intent to protect such businesses. To avoid this problem, the court held that the doctrine of vicarious liability "may apply only when 1) the corporation has derived some benefit from the RICO violation and 2) imposing vicarious liability is not inconsistent with the intent of Congress." *Id.* Congress's intent is determined by looking to the express language of the three subsections of § 1962.

In doing so, the *Liquid Air* court noted the difference between subsections (a) and (b), which have no requirement that the RICO person be separate from the enterprise, and subsection (c), which the *Haroco* court held clearly envisioned that the person and the enterprise be different entities. The *Liquid Air* court held, therefore, that respondeat superior liability is entirely appropriate under subsections (a) and (b) if the defendant derived a benefit from the violation, but that "vicarious liability should not be imposed under subsection (c) when a finding of liability would require the 'person' and 'enterprise' to be the same entity." *Id.* at 1306–07.

Just two months later, the Seventh Circuit decided *D & S Auto Parts,* 838 F.2d 964, the case on which defendants place principal reliance. In *D & S Auto Parts,* the plaintiff, a retail auto parts dealer, purchased wholesale parts from the defendant Walter Corporation. When the plaintiff discovered that it had paid $155,000 for parts that it had never ordered or received, it sued the salesman assigned to plaintiff's account, Walter Corporation, and its president and principle owner under RICO. The salesman had been taking parts from the corporation's warehouse, billing the plaintiff, and then selling those parts to another auto parts store which was also named as a defendant. Upon learning of the problem, plaintiff contacted

Walter Corporation's president who, following an investigation, terminated the salesman and notified the state's attorney. It was undisputed that Walter Corporation was not involved in the fraudulent scheme and could be liable based only on the salesman's actions under the doctrine of vicarious liability. *Id.*

Relying on its decision in *Haroco,* the Seventh Circuit stated generally that "vicarious liability is inconsistent with this court's approach to direct RICO liability." *Id.* at 966–67. "*Haroco* implicitly rejects a possibility of vicarious liability by making some participation in the criminal scheme a necessary element of liability for the corporation-enterprise." *Id.* Therefore, the court stated that imposing vicarious liability would defeat the purpose of RICO, "which, after all is to reach those who openly profit from racketeering, not those who are victimized by it." *Id.* at 967 (*quoting Haroco,* 747 F.2d at 402). Deciding that its reading of *Haroco* was consistent with the requirement of respondeat superior liability, which provides that an "employer may be vicariously liable only for employee actions taken within the scope of employment, that is, with the intent to benefit the employer," the court concluded that even though defendant Walter Corporation received the funds and presumably used them in its operations, it did so unwittingly, making it a victim, not a perpetrator. The employee stole the parts from the corporation for his own profit in selling them to third parties, leaving the corporation with falsified invoices and subject to suit. *Id.*

In the instant case, the corporate defendants all assert that they are in precisely the same position as was Walter Corporation and cannot be held liable for the actions of their employees. There are two problems with this argument. First, in *D & S* the employee's actions in billing the plaintiff was not for the purpose of benefitting his employer, but simply to cover up his theft. The plaintiff never actually received the product for which it was billed. In the instant case, the whole purpose of the employees' actions was to increase company sales, at increased prices, thereby increasing the defendant corporations' profits and the employees' commissions. Plaintiff actually received the products for which it paid, although allegedly at an increased price. True, the corporate defendants received the increased profits unwittingly, but they are not "victims" in the sense that Walter Corporation was a victim. Defendant's products were not stolen, and because plaintiff received the products for which it paid it cannot, as could the plaintiff in *D & S,* claim that its supplier did not perform.

Second, as plaintiff suggests, there are reasons to question the continued viability of *D & S.* The RICO action in *D & S* was brought pursuant to both subsections (a) and (c) of § 1962, yet the opinion, which is based entirely on the reasoning in *Haroco,* makes no distinction between the two. Surprisingly, *D & S* makes no reference to *Liquid Air,* which only two months earlier had held that vicarious liability was entirely appropriate under subsections (a) and (b) which have no requirement of nonidentity between the RICO person and the enterprise. If *D & S* is read to be a blanket rejection of vicarious liability, it would, in effect, be implicitly overruling *Liquid Air.* That would be a strained interpretation in light of the fact that two members of the panel that decided *D & S* were also on the *Liquid Air* panel.

Additionally, in *Ashland Oil, Inc. v. Arnett,* 875 F.2d 1271, 1281 (7th Cir.1989), the Seventh Circuit cited *D & S* as holding that the exception to respondeat superior liability is narrow and "only applies when a RICO claim is brought against the enterprise itself." Because the corporate defendant in *Ashland Oil* was alleged to have conspired with others to conduct another enterprise's affairs through a pattern of racketeering activity, not its own, the court held respondeat superior applicable:

Thus, the concern engendering the exception, that respondeat superior might be used to circumvent § 1962(c)'s requirement that the person conducting the racketeering activities be separate from the enterprise through which those

activities are conducted, does not apply here. [*Id.*]

■ Reading *Liquid Air, D & S* and *Ashland Oil* together leads to the conclusion that respondeat superior liability is available in those situations where its application would not circumvent § 1962(c)'s non-identity rule. This interpretation is consistent with that of other circuits. *See Cox v. Administrator of United States Steel & Carnegie,* 17 F.3d 1386 (11th Cir. 1994), (including a comprehensive discussion of the status of respondeat superior liability under RICO). Because in the instant case plaintiff has alleged that the corporate defendants, through their employees, conducted the affairs of an enterprise separate from the corporation, there is no impediment to respondeat superior liability.

To hold that respondeat superior liability is available, however, does not win the day for plaintiff. As set forth in *Liquid Air,* 834 F.2d at 1306, "a corporation will be vicariously liable for the wrongful acts of its employees when those acts are: 1) related to and committed within the course of employment; 2) committed in furtherance of the corporation; and 3) authorized or subsequently acquiesced in by the corporation." [4]

■ Plaintiff has properly alleged the first two elements, but not the third. Neither the complaint nor the subsequently filed RICO case statement includes any allegation that the corporate defendants knew of or authorized the employees' actions. The RICO case statement does contain a general allegation that "Arrow ratified Garrity's misconduct and did not dismiss Garrity until 1998, over one year after [plaintiff] notified Arrow of Garrity's misconduct." But this lone conclusory allegation, without any factual support, is insufficient under Fed.R.Civ.P. 9(b) to allege that a corporate defendant ratified a scheme to defraud as intricate and developed as the one alleged in this case. There is no allegation that once having been put on notice the corporate defendants allowed the employees to continue the scheme or even continue to work, or that the defendants did not immediately begin an investigation of the claim. *See Cox,* 17 F.3d at 1407. Nor is there any allegation that the corporate defendants attempted to cover up the fraud after learning of the allegations. Accordingly, the court concludes that plaintiff has failed to state a claim for respondeat superior liability against the corporate defendants.[5]

4. The third requirement, that the employer authorize or subsequently acquiesce in the wrongful conduct, ensures that corporations that are "merely the passive instrument for the wrongdoing" are not held liable, as required by *Haroco,* 747 F.2d at 401. Thus, *Liquid Air* does not seem to impose traditional respondeat superior liability, under which the employer is liable solely as a result of the employment relationship with the wrongdoer, and is otherwise without fault. The third element of *Liquid Air* does in fact require some fault on the part of the employer, although possibly after the fact, which is consistent with *Haroco's* requirement of some participation in the criminal scheme for imposition of liability.

5. Plaintiff's reliance on this court's general statements rejecting vicarious liability under RICO in *Emery v. American General Finance, Inc.,* 938 F.Supp. 495, 499 (N.D.Ill.1996), and *Aspacher v. Kretz,* 1997 WL 692943 (N.D.Ill. Aug.13, 1997), is unavailing. First, in each of

those cases the court's reference to respondeat superior liability was in relation to an alternate holding. Second, and more importantly, the court's rejection of vicarious liability in each case is perfectly consistent with the holding in the instant case.

The main holdings in *Emery,* which was affirmed on appeal, 134 F.3d 1321 (7th Cir. 1998), were that the alleged RICO person was not separate and distinct from the enterprise, and that a group of inter-related corporations could not, by themselves, constitute a RICO enterprise. 938 F.Supp. at 498. Because of the non-identity rule, vicarious liability was not available. The court then noted that if the plaintiff was actually attempting to allege that the subsidiary corporation had acted completely distinct from the parent which had no knowledge of the violation, then the plaintiff was attempting to hold the parent liable on a respondeat superior basis. *Id.* at 499. That attempt, perfectly consistent with the court's holding today, was improper absent any alle-

Therefore Arrow's, Milgray's and APC's motions to dismiss Counts I and II are granted.[6]

## B. RICO Enterprise and Pattern of Racketeering Activity

As noted, the corporate defendants and Garrity have also argued that Count I fails to allege a RICO enterprise or a pattern of racketeering activity. With respect to the enterprise, defendants argue that plaintiff has failed to allege any structure. The court disagrees.

■ It is true, that the hallmark of an enterprise is structure. *United States v. Rogers*, 89 F.3d 1326, 1337 (7th Cir.1996). Enterprises include "informal organizations such as criminal gangs and there must be some structure to distinguish an enterprise from a mere conspiracy, but there need not be much." *Id.* A RICO enterprise is an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making. *Id.* The continuity of an informal association and the differentiation among roles can provide the requisite structure. *Id.*

■ In the instant case, the scheme allegedly continued for a number of years with the individuals performing varied roles. Obviously, Barry's role as purchaser for plaintiff varied from Garrity's role as seller for Arrow, which varied from the other defendants who allegedly laundered the profits for Barry. Barry was apparently the mastermind and ringleader, but the complaint very clearly alleges that the individuals met and made at least some decisions as a group. That is sufficient to satisfy the enterprise requirement.

■ Defendants next argue that the complaint fails to allege a pattern of racketeering activity. RICO requires at least two acts of racketeering activity within a ten year period. 18 U.S.C. § 1961(5). Racketeering activity includes any act indictable under certain specific provisions of the United States Code, including, for purposes of this case, 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud). While two predicate acts are necessary to form a pattern, two acts alone are generally not sufficient. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). In addition to the two predicate acts, a RICO plaintiff must demonstrate that the predicate acts are related and that they amount to or pose a threat of continued criminal activity. *Id.* at 239, 109 S.Ct. 2893. "In other words, a RICO plaintiff . . . must show continuity plus relationship with respect to the alleged predicates." *Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, 1048 (7th Cir.1998).

In the instant case, the relationship prong is uncontested. The numerous acts of mail fraud alleged undoubtedly "have the same or similar purposes, result, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not

gation that the parent corporation had ratified or acquiesced in the improper conduct.

In *Aspacher,* this court held that a Futures Commission Merchant ("FCM") which was alleged merely to have cleared trades for a corporation defined as a RICO enterprise did not violate RICO. "Without more [i.e. some allegation that the FCM was aware of or acquiesced in the illegal activity] these allegations are insufficient to subject [the FCM] to treble damages under § 1962(c)." *Id.* at *11. In addition, because the plaintiffs did not and could not allege that the FCM, whom the plaintiffs sought to hold vicariously liable for the acts of its alleged agent, knew that the

agent was sending false statements to the investors or that the agent made false assurances to investors, this court held that the FCM was not a "central figure" to the scheme. *Id.* at *12. Again, this holding is perfectly consistent with the holding in the instant case that vicarious liability is available only if the plaintiff can allege that defendant acquiesced in or ratified the employee's conduct.

6. Should plaintiff be able, within the bounds of Fed.R.Civ.P. 11, to support a claim for ratification against any defendant, it may seek leave to file an amended complaint.

isolated events." *Id.* (quoting *H.J., Inc.,* 492 U.S. at 240, 109 S.Ct. 2893).

■ It is the continuity aspect of the pattern requirement that defendants challenge. "Despite the Supreme Court's statement that a RICO plaintiff must show that the predicate acts themselves amount to, or otherwise constitute a threat of, continuing racketeering activity," *H.J., Inc.,* 492 U.S. at 240,, 109 S.Ct. 2893 there is no requirement that the criminal activity be ongoing or capable of being repeated in the future. Rather, continuity "is both a closed-and-open-ended concept, in that it refers 'either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.'" *Corley,* 142 F.3d at 1048 (quoting *H.J., Inc.,* 492 U.S. at 241, 109 S.Ct. 2893).

■ Continuity over a closed period (as alleged in the instant case) may be demonstrated by proof of a series of related predicate acts extending over a substantial period of time. *Id.* Because when Congress enacted RICO it was generally concerned with long term criminal conduct, the Court cautioned that "predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *H.J., Inc.,* 492 U.S. at 242, 109 S.Ct. 2893. The Seventh Circuit has set forth five factors to be analyzed to determine closed period continuity: "the number and variety of predicate acts and the length of time over which they were committed, the number of witnesses, the presence of separate schemes, and the occurrence of distinct injuries." *Morgan v. Bank of Waukegan,* 804 F.2d 970–75 (7th Cir.1986). No single factor is determinative. *Id.*

■ Here, plaintiff has alleged a scheme lasting almost eight years involving thousands of predicate acts including mail and wire fraud and money laundering.

Each of the thousands of fraudulent invoices sent constitutes a separate distinct injury. *Liquid Air,* 834 F.2d at 1304–05. Even accepting defendants' characterization of the complaint as alleging only a single scheme against a single victim, the shear length of time the scheme existed and the number of resulting predicate acts is sufficient to established closed ended continuity and a pattern of RICO activity. Accordingly, Garrity's motion to dismiss Count I is denied.

## C. RICO Conspiracy

■ Garrity also argues that Count II fails to state a claim for RICO conspiracy under § 1962(d). Count II alleges that the defendants conspired to violate § 1962(c). The elements of a conspiracy to violate § 1962(c) are that the defendants agreed to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity, and that defendants further agreed that someone would commit at least two predicate acts to accomplish these goals. *Gagan v. American Cablevision, Inc.,* 77 F.3d 951, 961 (7th Cir.1996). No individual defendant need have agreed "to actually commit the predicate acts itself or even to participate in the commission of those acts so long as they agree that the acts would be committed on behalf of the conspiracy." *MCM Partners, Inc. v. Andrews– Bartlett and Associates, Inc.,* 62 F.3d 967, 979–80 (7th Cir.1995). Plaintiff's complaint clearly sets forth allegations that Garrity and the other defendants agreed to place orders and pay invoices. Under *MCM,* the allegations are sufficient to allege a conspiracy. Accordingly, Garrity's motion to dismiss Count II is denied.

### *APC's Motion for Summary Judgment*

■ APC's has moved for summary judgment on all counts,[7] arguing that it

---

7. APC is named in six counts. Counts I and II (RICO) have been dismissed for failure to state a claim. Count IV alleges a breach of fiduciary duty and inducement to breach fiduciary duty, Count V alleges common law fraud and conspiracy, Count VI alleges violations of the Illinois Consumer Fraud Act and Count VIII seeks an accounting and constructive trust.

cannot be held vicariously liable for the actions of Iatomasi or Krause. As noted above, the scheme alleged against APC is slightly different than that against Arrow and Milgray. The complaint alleges that APC authorized Metro Teluse, Inc. and Dyna Tech Sales, Inc. and their employees, Krause and Iatomasi, to act as APC's agents to obtain and accept orders from plaintiff. APC sold parts to plaintiff through orders that Krause and Iatomasi obtained by paying Barry consulting fees and/or commissions.

APC notes that Metro Teluse and, therefore, Krause and Iatomasi, were its manufacturer's representatives and thus independent contractors rather than employees. It then relies on the general law of Illinois as set forth in *Anderson v. Marathon Petroleum Company*, 801 F.2d 936, 938 (7th Cir.1986), that a principal "is not liable for an independent contractor's torts even if they are committed in the performance of the contract and even though a principal is liable under the doctrine of respondeat superior for the torts of his employees if committed in the furtherance of their employment."

Plaintiff does not dispute that Iatomasi and Krause were APC's manufacturer's representatives and not employees, but argues that *Anderson*, and the general principles it relies on are applicable only to situations involving an agent's physical conduct. For example, in *Anderson* the issue was whether a principal could be held liable for the death of an employee of an independent contractor who had been exposed to silicone dust while sandblasting the principal's storage tank. In concluding that the principal could not be held liable, the court noted that the rationale for the general rule was that a principal generally does not supervise the details of an independent contractor's work and thus is not in a position to prevent negligent performance, while the essence of employment is that the employee surrenders to the employer the right to direct the details of his work in exchange for wages. *Anderson*, 801 F.2d at 938. Indeed, at least one Illinois court has described the general rule as "a master is liable for the acts of his servant committed within the scope of employment, and a principal is liable for the acts of an agent performed within the scope of the agency, but neither is liable for the acts of an independent contractor. Therefore, an employer is not responsible for the *physical* acts of an independent contractor who also happens to be an agent." *Kouba v. East Joliet Bank*, 135 Ill.App.3d 264, 267, 89 Ill.Dec. 774, 481 N.E.2d 325 (3d Dist.1985) (emphasis added).

Fraud, however, is not a physical act, and plaintiff argues that fraud cases should not be analyzed using master/servant concepts, but rather under the concept of "authority" in agency law. Plaintiff argues that the rule in fraud cases is set forth in section 261 of the Restatement (Second) of Agency which has been accepted in Illinois, which provides:

> A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit fraud upon third persons is subject to liability to such third person's flagrant fraud.[8]

Under § 261, a principal is subject to liability although the principal may be entirely innocent, has received no benefit from the transaction, and the agent acted solely for his own purposes. Liability is based on the fact that the agent's position facilitates the consummation of the fraud, since from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of business confided to him. *Id.*, Comment a.

In the instant case, it is undisputed that APC placed Krause and Iatomasi in a position to solicit orders from plaintiff. From plaintiff's viewpoint the transactions

---

8. It should be noted that the Seventh Circuit has adopted a different standard for vicarious liability for RICO cases than accepted by the

Restatement for state law claims. *See supra,* note 4.

seemed regular on their face, and Krause and Iatomasi appeared to be acting in the ordinary course of business. Therefore a jury could find that Krause and Iatomasi apparently acted within their authority when they committed the alleged fraud.

Moreover, although not alleged in the complaint, the plaintiff has presented evidence from which a jury could find that the principals at APC were aware that Krause and Iatomasi were paying Barry kickbacks, thereby ratifying the fraud. Plaintiff has submitted an affidavit from Iatomasi in which he states that based on their conduct and relationship with Krause, he believes the APC principals were aware of the payoffs. Additionally, after Iatomasi left his company and stopped soliciting orders for APC, he told Shailesh Patel, one of APC's owners, that he had been paying Barry. Patel responded by saying, "well I figured that." Although certainly not conclusive, this evidence is sufficient to raise a question of fact about ratification. Fed.R.Civ.P. 56 provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Iatomasi's affidavit raises an issue as to APC's knowledge of the fraud. Because that fact is material to the claim, summary judgment is inappropriate. Therefore, APC's motion for summary judgment is denied.

### Conclusion

For the reasons set forth above, Arrow, Milgray, and APC's motions to dismiss Counts I and II are granted. Garrity's motion to dismiss Counts I and II is denied. APC's motion for summary judgment on Counts IV, V, VI and VIII is denied.